UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case No.  04-12487 (NG)

| | |
|---|---|
| TRANSCONTINENTAL INSURANCE CO., et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| A&A WINDOW PRODUCTS, INC., and | ) |
| SOLOCO, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFFS' MOTION FOR REASSIGNMENT PURSUANT TO L.R. 40.1 (I)

Plaintiffs National Fire Insurance Co. of Hartford, Valley Forge Insurance Company, Transcontinental Insurance Company and Transportation Insurance Company, all of which are members of the CNA Insurance Group (collectively referred to as the "CNA insurers"), respectfully requests that the above-captioned litigation, an insurance coverage declaratory judgment action,  be reassigned to Judge Douglas Woodlock pursuant to Local Rule 40.1(I) because the instant case involves: the same property, construction project and events at the Lafayette School in Everett, Massachusetts; the same issue of whether general liability insurance coverage exists for claims of property damage allegedly arising from defective construction and workmanship by contractors; and the same legal arguments and defenses as those already considered and ruled upon by Judge Woodlock in a case previously filed in this district, disposition of which the First Circuit affirmed on appeal.  *See B&T Masonry Construction Co., Inc. v. Public Service Mutual Ins. Co.*, 382 F.3d 36 (1st Cir. 2004).

In support of this Motion, Plaintiffs rely upon their Memorandum In Support of Plaintiffs' Motion for Reassignment Pursuant to L.R. 40.1(I), which is filed herewith.

NATIONAL FIRE INSURANCE CO. OF HARTFORD,
VALLEY FORGE INSURANCE COMPANY,
TRANSPORTATION INSURANCE COMPANY, and
TRANSCONTINENTAL INSURANCE COMPANY,

By their attorneys,

Date: April 5, 2005

Gregory P. Deschenes (BBO # 550830)
John S. Stadler (BBO # 548485)
Michael L. Cornell (BBO # 651405)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I certify that on April 5, 2005, counsel for Plaintiffs attempted in good faith to resolve the issues presented in this Motion with counsel for the Defendant A&A Window Products, Inc. but was unable to do so. Defendant Soloco, Inc. has been defaulted and, to my knowledge, is not represented by counsel.

Michael L. Cornell

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for Defendant A&A Window Products, Inc. by electronic service and upon Soloco, Inc. by regular mail on April 5, 2005.

Michael L. Cornell

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| B&T MASONRY CONSTRUCTION | ) | |
| CO., INC., | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 02-10595-DPW |
| v. | ) | |
| | ) | |
| PUBLIC SERVICE MUTUAL | ) | |
| INSURANCE CO., A MAGNA CARTA | ) | |
| COMPANY, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER
September 26, 2003

Plaintiff B&T Masonry Construction Co., Inc. ("B&T") seeks
declaratory judgment that Public Service Mutual Insurance Company
("Public Service") has a duty to defend and indemnify the plaintiff
subcontractor with respect to an action brought against it by general
contractor Barletta Engineering Corporation. ("Barletta").  The case
is before me on defendant's motion for summary judgment.

## I.   INTRODUCTION

The following facts are not in dispute.  In March 1998, the
City of Everett (the "City") and Barletta entered into a contract to
construct the Lafayette Elementary School in Everett, Massachusetts.
Later that month, Barletta, as general contractor, and B&T, as
subcontractor, entered into a written subcontract wherein B&T agreed
to furnish labor, materials and equipment to complete the masonry

1

work.

B&T furnished labor, materials and equipment to the project from October 8, 1998 through March 31, 2000. Public Service issued B&T two general liability insurance policies, the first of which was in effect from March 6, 2000 to March 6, 2001, and the second of which was in effect from March 6, 2001 to March 6, 2002. The policies are identical with respect to the language at issue here.

On October 24, 2000, the City filed suit against Barletta and Barletta's surety, Fireman's Fund Insurance Company, alleging that the project was plagued with water leaks, causing property damage, including mold contamination, to walls, ceilings, floors and other building materials, and leading to costly remediation. The City brought claims against Barletta for breach of contract, negligence, breach of implied covenant of good faith and fair dealing, breach of express warranty, indemnification, and violations of Mass. Gen. Laws ch. 93A, charging that the "water leakage conditions are caused, in whole or in part by, alone or in combination with, certain design deficiencies, errors or omissions; negligent and defective construction practices, materials or methods; premature failure of material or other causes." The City also brought claims against project architect Earl R. Flansburgh Associates, Inc. ("Flansburgh") for breach of contract, violations of Mass. Gen. Laws ch. 7, § 38H(J), negligence, breach of implied covenant of good faith and fair

2

dealing, violations of Mass. Gen. Laws ch. 93A, and  indemnification.

In response, Barletta asserted claims against six of its subcontractors, including B&T, for breach of contract, negligence, breach of warranty, and indemnification, passing through the City's claims.  Barletta, like the City, also asserted claims against Flansburgh for negligence, negligent misrepresentation of the project site conditions, and violation of Mass. Gen. Laws ch. 93A.  B&T answered Barletta's Amended Third-Party Complaint denying liability.

On and before October 11, 2001, B&T tendered the defense of Barletta's claims against B&T to Public Service.  On October 23, 2001, Public Service declined B&T's tender.  On July 8, 2002, in light of the City's Second Amended Supplemental Complaint, B&T renewed its tender of the defense of Barletta's claims against B&T to Public Service.  On July 16, 2002, Public Service denied B&T's renewed tender.

B&T filed the instant action in this court on April 1, 2002. The plaintiff seeks a declaratory judgment that it is entitled to defense and indemnity under the policy for claims asserted against it in the underlying actions between Barletta and B&T and between Barletta and the City.  The defendant has filed a motion for summary judgment on the declaratory judgment action.

## II.  DISCUSSION

A.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp., 317 F.3d 16, 19 (1st Cir. 2003). All facts are to be viewed, and all inferences drawn, in the light most favorable to the nonmoving party. Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002).

The interpretation of an insurance policy is normally a question of law for the court. Ruggiero Ambulance Serv., Inc. v. Nat'l Grange Ins. Co., 430 Mass. 794, 797 (2000). When the relevant facts concerning whether a claim is covered by the policy are not in dispute, the application of the insurance policy to those facts is also a question of law that is appropriately resolved on summary judgment. Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 61 (1st Cir. 2001).

Under Massachusetts law, the traditional rules of contract interpretation govern construction of an insurance policy. Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000). The first rule is to afford the language of the policy its plain and ordinary meaning. Id. In so doing, I must "consider what an objectively reasonable insured, reading the

4

relevant policy language, would expect to be covered." Id.; Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849 (1993).

## B.   Duty to Defend

In Massachusetts, the duty of an insurance carrier to defend the insured is broader than, and independent of, its duty to indemnify. Brazas Sporting Arms, 220 F.3d at 4; Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989). The duty to defend is triggered if the allegations in the underlying complaint are "'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms." Ruggiero Ambulance Serv., 430 Mass. at 796 (quoting Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. 330, 332 (1992)); Lusalon, Inc. v. Hartford Accident & Indem. Co., 400 Mass. 767, 772 (1987).   The First Circuit has recently noted that it has "defined 'adumbrate' in the liability insurance context to mean 'to give a sketchy representation of; outline broadly, omitting details . . . or to suggest, indicate, or disclose partially and with a purposeful avoidance of precision.'" Global Naps v. Fed. Ins. Co., 336 F.3d 59, 61 n.2 (1st Cir. 2003) (internal quotation marks omitted).

Under Massachusetts law "the duty to defend is based on the facts alleged in the complaint and those facts which are known by the insurer." Ruggiero Ambulance Serv., 430 Mass. at 796 (quoting Boston

Symphony Orchestra, 406 Mass. at 10-11). For the duty to arise, "the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." SCA Serv., Inc. v. Transp. Ins. Co., 419 Mass. 528, 532 (1995).

The insured bears the initial burden of proving coverage under the policy. Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 230 (1997). However, once the initial burden has been satisfied, the burden shifts to the insurer to prove the applicability of a separate exclusionary provision. Id. Any ambiguities in the exclusions must be strictly construed against the insurer. Brazas Sporting Arms, 220 F.3d at 4. The policy need not cover all of the claims made against the insured. The insurer has a duty to defend the entire lawsuit if it "has a duty to defend any of the underlying counts in the complaint." Liberty Mut., 260 F.3d at 63.

## C. Relevant Policy Provisions

That the plaintiff meets the initial burden of coverage is uncontested. Section I(A)(1)(a) of the policy[1] provides that Public

---

[1]    As noted above, the policies contain identical language as relates to the present litigation. For simplicity's sake, therefore, I will refer to the "policy" rather than the "policies" and cite to language in the first policy only.

Service will "pay those sums that the insured becomes legally
obligated to pay as damages because of 'bodily injury' or 'property
damage' to which this insurance applies." The burden having shifted
to the insurer, Public Service contends that certain exclusionary
provisions in the policy apply such that it owes no duty to defend
B&T in the underlying action against Barletta. Public Service argues
for the application of the following five exclusions to coverage:

Exclusion I(A)(2)(j)(5) & (j)(6) applies for:

"Property damage"[2] to:

(5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations.

(6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."[3]

Subsection (j)(6) does not apply to property damage that occurred after B&T's work was completed, see supra note 3.  Exclusion I(A)(2)(l), however, does apply to such completed work:

---

[2]    The policy defines "property damage" as:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Section V(15).

[3]    The products-completed operations hazard includes "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:  (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned."  Section V(14)(a).

8

> "Property damage" to "your work" arising out of
> it or any part of it and included in the
> "products-completed operations hazard."

> This exclusion does not apply if the damaged
> work or the work out of which the damage arises
> was performed on your behalf by a
> subcontractor.

Exclusion I(A)(2)(m) applies to property damage arising out of B&T's

work:

> "Property damage" to "impaired property" or
> property that has not been physically injured,
> arising out of: (1) A defect, deficiency,
> inadequacy or dangerous condition in "your
> product" or "your work"; or (2) A delay or
> failure by you or anyone acting on your behalf
> to perform a contract or agreement in
> accordance with its terms.

> This exclusion does not apply to the loss of
> use of other property arising out of sudden and
> physical injury to "your product" or "your
> work" after it has been put to its intended
> use.

See, e.g., Dorchester Mut. Fire Ins. Co. v. First Kostas Corp., 49

Mass. App. Ct. 651, 653-54 (2000) (construing virtually identical

policy language). If product work is withdrawn or recalled from the

market, coverage is excluded under section I(A)(2)(n):

> Damages claimed for any loss, cost or expense
> incurred by you or others for the loss of use,
> withdrawal, recall, inspection, repair,
> replacement, adjustment, removal or disposal
> of: (1) "Your product"; (2) "Your work"; or (3)
> "Impaired property";

> If such product work, or property is withdrawn
> or recalled from the market or from use by any

9

person or organization because of a known or
suspected defect, deficiency, inadequacy or
dangerous condition in it.

B&T objects to the application of any of these exclusions, each
of which applies only if the damage alleged was a result of B&T's
work, because "there is at least an issue of fact as to whether the
damage is the result of work performed by B&T" or the work of others,
including Flansburgh and the other subcontractors. This argument
forms the basis of B&T's opposition to the defendant's motion for
summary judgment. Public Service rejects plaintiff's premise
outright, calling it "plainly wrong," because the policy covers only
that damage for which B&T could be held "legally obligated," and
property damage caused by others could not result in a legal
obligation to B&T.

## D. Application of Policy Exclusions

I find that Public Service has no duty to defend B&T in the
underlying action between Barletta and B&T. Barletta's Third Party
Complaint against B&T seeks to hold B&T liable to Barletta for
damages arising out of B&T's work performance only. See B&T's Exh.
B, Third Party Complaint, ¶¶ 51, 55, 58-59, 61-63. Consequently,
regardless of the cause of the damages, any liability that could
conceivably attach to B&T through the underlying complaint would fall
within one of the policy's exclusions.

If the underlying complaint sought to hold B&T liable for any

10

damages that did not arise from its work, and if there existed a
question of fact as to what caused the damage -- such as an accident
or act of God -- the claim might conceivably be covered by the
policy. Cf. Shelby Ins. Co. v. Northeast Structures, Inc., 767 A.2d
75 (R.I. 2001) (finding duty to defend arose where insured raised
possibility of damage caused by an act of God as an affirmative
defense in answer to the underlying complaint). The underlying
complaint here does not allege that and, moreover, neither party
contends that the damage was caused by anything or anyone other than
one or more of the subcontractors or the project architect.

B&T urges reliance upon the arguably contrary view taken by the
Massachusetts Superior Court in American Masonry Construction v.
Aetna Casualty & Surety Co., 1995 WL 808732 (Mass. Super. Ct.  July
27, 1995). In American Masonry, the court denied cross motions for
summary judgment by the insured and insurer on the issue of
indemnification finding that a genuine issue of material fact existed
as to how and by whom the property was damaged. The American Masonry
opinion, however, does not make clear the contents of the underlying
complaint; the court merely states that recovery was sought from the
insured for replacement of the damaged windows. Thus, unlike
Barletta's Third Party Complaint against B&T, it is unclear whether
the third party complaint in American Masonry limited recovery
against the insured to that damage arising from the insured's "work,"

or, for example, from damage arising from an "occurrence."[4]

The issue of damage from an "occurrence" was presented in another Massachusetts Superior Court case decided by the same judge, Frank I. Rounds Corp. v. Lumbermens Mutual Casualty Co., 1995 WL 809982 (Mass. Super. Ct. July 28, 1995). In Rounds, the underlying complaint alleged that the property damage at issue resulted from an "occurrence," a term that the policy between the insured, Rounds, and insurer, Lumbermens, defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." Id. at *2, n.2 (internal quotation marks omitted). The Rounds court held that a policy exclusion[5] arising out of Rounds's operations did not relieve Lumbermens of its duty to defend because a question existed whether the occurrence -- a boiler malfunction -- was a result of work done by someone other than the

---

[4]    See also Employers Mut. Cas. Co. v. Pires, 723 A.2d 295, 299 (R.I. 1999) (reversing judgment that insurer owed insured duty to defend while noting that issue of fact remained as to whether insured had caused damage to property accidentally, thereby falling outside of "'incorrectly performed' work" exclusion).

[5]    This exclusion, as described by the Rounds court, excluded from coverage "that particular part of any property, not on the premises owned by or rented to the insured, (i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or (ii) out of which any property damage arises, or (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured." Rounds, 1995 WL 809982, at *3.

plaintiff, and whether the damage occurred to

property -- equipment ancillary to the installation of the boilers --

that was not supplied or worked on by the plaintiff. Id. at 3.

The key difference between the present case and Rounds lies in

the language of the underlying complaint. Here, the complaint

specifically seeks recovery for damages stemming from the plaintiff's

"work," while, as described by the court in Rounds, the complaint in

that case alleged that the property damage resulted from an

"occurrence." Id. at 2. Thus, Rounds could have been held liable

through the underlying complaint for damage resulting from an

"occurrence," even if its work or materials did not cause the

occurrence. By contrast, the underlying complaint seeks to hold B&T

liable for its "work" only, a prospect encompassed completely by one

or more of the exclusions listed above.

As to the specific exclusion or exclusions that preclude

coverage here, I note only that the sum of (j)(5), (j)(6), (l), (m)

and (n) cover all the claims in the underlying complaint.[6] From the

---

[6] The application of exclusion (n) is subject to plaintiff's
motion to strike. The motion to strike concerns a stipulation
stating that the Lafayette Elementary School was "withdrawn from use
as a result of the purported property damage" alleged in the City's
complaint against Barletta. The stipulation is signed by Thomas G.
Guiney, counsel for the defendant, and Guiney for Francis A. Shannon
III, counsel for the plaintiff.

The plaintiff seeks to strike the stipulation on the grounds
that neither Shannon nor anyone from Shannon's firm of record
authorized Guiney to sign his name to the stipulation. Counsel for
the defendant argues that an associate from Shannon's firm, Shane

facts as presented by the parties it is not entirely clear whether the damage occurred during or after the completion of construction. Consequently, I am unable to single out the precise exclusion which will be applicable. But together the available exclusions cover all the contingencies presented in the complaint and, even without identifying the particular exclusion applicable, it is apparent there is no duty to defend here.

Finally, because the duty to indemnify is narrower than the duty to defend, in light of the fact that I have found that Public Service owes B&T no duty to defend, I must find that Public Service does not owe B&T the narrower duty to indemnify.

---

Smith, authorized the signature and that, at any rate, B&T does not deny that the statement in the stipulation is true. The dispute centers around a sequence of events in which Smith voiced his objection to Guiney regarding a proposed second point in a draft version of the stipulation, Guiney removed that point from the document, and, understanding he was authorized to do so, signed Shannon's name to it. Regardless of whether Guiney was authorized to sign the stipulation on Shannon's behalf, I need not resolve this motion because, even without exclusion (n), the other four exclusions cover the claims in the underlying complaint.

### III.  CONCLUSION

For the reasons set forth more fully above, defendant's motion for summary judgment is granted.  Plaintiff's motion to strike is denied as moot, see supra note 6.

/s/Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

1 of 14 DOCUMENTS

**B&T MASONRY CONSTRUCTION CO., INC., Plaintiff, Appellant, v. PUBLIC SERVICE MUTUAL INSURANCE CO., Defendant, Appellee.**

No. 03-2473

**UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

*382 F.3d 36; 2004 U.S. App. LEXIS 18306*

**August 30, 2004, Decided**

**SUBSEQUENT HISTORY:** [**1] As Amended, September 30, 2004

**PRIOR HISTORY:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS. [Hon. Douglas P. Woodlock, U.S. District Judge].

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insured sought review of an order from the United States District Court for the District of Massachusetts, which awarded summary judgment to defendant insurer in an action for defense and indemnification.

**OVERVIEW:** A city retained a general contractor to construct a new school. The general contractor retained the insured, a masonry subcontractor, to work on the project. The city later sued the general contractor, alleging that its faulty workmanship allowed water leakage, which caused property damage to the school. The general contractor brought an action against the insured for deficient masonry work. The insured held two general liability insurance policies issued by the insurer. The insurer refused to defend the insured and disclaimed any coverage obligation. The insured brought an action against the insurer. The trial court granted the insurer's motion for summary judgment, holding that all of the damages described in the general contractor's complaint fell within the compass of the exclusions contained in the policies. On appeal, the insured suggested for the first time that the exclusion clauses

rendered the insurance policies illusory. The record, however, belied that claim. The court found that the insured's new theory would not have prevailed even if it had been properly preserved. Because some negligence claims were covered, the policies were not illusory.

**OUTCOME:** The court affirmed the order of the trial court.

**LexisNexis(R) Headnotes**

*Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules*
[HN1] Under Massachusetts cases, the interpretation of an insurance policy is normally a question of law for the court. Where the material facts upon which a coverage question is based are not genuinely in dispute, the application of the policy to those facts is likewise a question of law.

*Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules*
*Insurance Law > Claims & Contracts > Policy Interpretation > Plain Language*
[HN2] Massachusetts courts apply the traditional rules of contract interpretation to the construction of insurance policies. The first principle is to afford the language of the policy its plain meaning.

*Insurance Law > Claims & Contracts > Policy Interpretation > Ambiguous Terms*
*Insurance Law > General Liability Insurance > Defense Obligations*
[HN3] The duty to defend is based on the facts alleged in the complaint and those facts which are known by the

insurer. For the duty to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. The insured bears the initial burden of showing coverage under the policy's insuring agreements. Once the insured has accomplished this feat, the burden shifts to the carrier to prove the applicability of one or more separate and distinct exclusionary provisions. To the extent that any ambiguity permeates a policy exclusion, it must be construed strictly against the insurer.

*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN4] In the absence of extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.

*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN5] To preserve a point for appeal, some developed argumentation must be put forward in the nisi prius court; a veiled reference to a legal theory is not enough to satisfy this requirement.

*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN6] A party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the trial court.

*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN7] An appellate court has the authority, in its discretion, to consider theories not articulated below. However, exceptions to the raise-or-waive rule should be few and far between, and, accordingly, this power is to be used sparingly. The typical case involves an issue that is one of paramount importance and holds the potential for a miscarriage of justice.

**COUNSEL:** Francis A. Shannon, III, with whom Shannon Law Associates, Inc. was on brief, for appellant.

Nina E. Kallen, with whom Thomas G. Guiney was on brief, for appellee.

**JUDGES:** Before Boudin, Chief Judge, Selya and Howard, Circuit Judges.

**OPINIONBY:** SELYA

**OPINION:**

[*37] **SELYA, Circuit Judge.** In 1998, the City of Everett (the City) retained Barletta Engineering

Corporation (Barletta) to construct a new elementary school. Barletta, as general contractor, engaged a myriad of subcontractors to assist in this venture. Among them was appellant B&T Masonry Construction Co., Inc. (B&T). The work consumed the better part of two years.

In the City's view, the completed structure left something to be desired. It sued Barletta in a state court, alleging that Barletta's faulty workmanship had allowed water leakage which, in turn, had caused property damage to the school building (including mold contamination [**2] of ceilings, walls, floors, and other components). Barletta promptly filed a third-party complaint against B&T and sundry other subcontractors. In the only iteration relevant here, the third-party complaint attributed the damage to B&T's deficient masonry work.

Appellee Public Service Mutual Insurance Co. (Public Service) had issued two [*38] consecutive commercial general liability (CGL) policies to B&T, which were serially in effect during the course of B&T's work on the school project. B&T tendered the defense against Barletta's claim to the insurer. Public Service refused the tender and disclaimed any coverage obligation. n1

> n1 B&T made a similar tender to the insurer when the City later filed amended complaints and Barletta, in turn, filed amended third-party complaints. Public Service rejected these tenders as well. Nothing in the amended pleadings changes the coverage analysis.

Stung by this rejection, B&T repaired to the United States District Court for the District of Massachusetts. Invoking that court's [**3] diversity jurisdiction, see *28 U.S.C. § 1332(a)*, it initiated an action seeking a declaration that Public Service had a duty to defend and indemnify it with respect to Barletta's claim. In due course, the insurer moved for summary judgment. See *Fed. R. Civ. P. 56.* The district court granted this motion, holding that all the damages described in Barletta's third-party complaint fell within the compass of the exclusions contained in the CGL policies. n2 B&T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., No. 02-10595, slip op. at 10 (D. Mass. Sept. 26, 2003) (unpublished) (D. Ct. Op.). B&T appeals from this ruling.

> n2 Because the two policies are substantially identical with respect to the matters at issue, we hereinafter refer, for simplicity's sake, only to the first policy.

We need not tarry. The insuring agreement, section I(A)(1)(a), provides in pertinent part that Public Service will "pay those sums that the insured becomes legally [**4] obligated to pay as damages because of . . . 'property damage' to which this insurance applies." This insuring agreement is, however, subject to certain so-called "business risk" exclusions. These include section I(A)(2)(j)(5) (which excludes coverage for property damage to "that particular part of real property on which [the insured] or any contractors or subcontractors working directly or indirectly on [the insured's] behalf are performing operations" so long as the 'property damage' arises out of those operations"); section I(A)(2)(j)(6) (which excludes coverage for property damage to "that particular part of any property that must be restored, repaired or replaced because [the insured's work on it] was incorrectly performed"); section I(A)(2)(l) (which excludes coverage, with a limitation not relevant here, for "'property damage' to '[the insured's] work' arising out of it or any part of it"); section I(A)(2)(m) (which excludes coverage for "'property damage' . . . arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition" in the insured's product or work); and section I(A)(2)(n) (which excludes coverage for "damages claimed for any loss, cost or [**5] expense incurred by [the insured] or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of . . . '[the insured's] work'"). The question presented in this case is whether Barletta's derivative claim (seeking, in effect, indemnification or contribution anent the City's claim for damages to the school building) falls within the purview of some or all of these exclusions.

Because this is a diversity case, Massachusetts law controls. *United States Liab. Ins. Co. v. Selman, 70 F.3d 684, 688 (1st Cir. 1995).* [HN1] Under the Massachusetts cases, the interpretation of an insurance policy is normally a question of law for the court. *Ruggerio Ambul. Serv., Inc. v. Nat'l Grange Ins. Co., 430 Mass. 794, 724 N.E.2d 295, 298 (Mass. 2000).* Where, as here, the material facts upon which a coverage question is based are not genuinely [*39] in dispute, the application of the policy to those facts is likewise a question of law (and, thus, properly resolved on summary judgment). *Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 61 (1st Cir. 2001).*

[HN2] Massachusetts courts apply the traditional [**6] rules of contract interpretation to the construction of insurance policies. *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000).* The first principle is to afford the language of the policy its plain meaning. Id. Because the duty of an insurance carrier to defend the insured is broader than its duty to indemnify, see id., we focus on that duty.

[HN3] The duty to defend is, of course, "based on the facts alleged in the complaint and those facts which are known by the insurer." *Boston Symph. Orch., Inc. v. Comm'l Union Ins. Co., 406 Mass. 7, 545 N.E.2d 1156, 1158 (Mass. 1989).* For the duty to arise, "the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage." *SCA Servs. v. Transportation Ins. Co., 419 Mass. 528, 646 N.E.2d 394, 397 (Mass. 1995)* (citation and internal quotation marks omitted). The insured bears the initial burden of showing coverage under the policy's insuring agreements. *Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 676 N.E.2d 801, 804 (Mass. 1997).* Once the insured [**7] has accomplished this feat, the burden shifts to the carrier to prove the applicability of one or more separate and distinct exclusionary provisions. Id. To the extent (if at all) that any ambiguity permeates a policy exclusion, it must be construed strictly against the insurer. *Brazas Sporting Arms, 220 F.3d at 4.*

Here, B&T satisfied its threshold burden of showing coverage under an insuring agreement. The question reduces, then, to whether the business risk exclusions avoid the application of that coverage. On that question, Public Service had the devoir of persuasion and relied upon the plain language of the exclusions to show that they applied. In arguing against that proposition before us, B&T asserts a nascent theory that departs dramatically from what it argued in the court below. We explain briefly.

In the lower court, B&T acknowledged that the business risk exclusions applied to damage to the school building caused by its workmanship but posited that whether the damage claimed by the City (and, derivatively, by Barletta) was caused by B&T's workmanship or that of another subcontractor remained an open question. This open question, it asseverated, precluded [**8] summary judgment. The district court rejected that asseveration, concluding (correctly, in our view) that any liability that might attach to B&T under the third-party complaint necessarily would stem from its own workmanship and, thus, would be excluded from coverage. D. Ct. Op. at 10. If another firm were negligent and B&T were not, that fact would in no way alter the coverage equation. Id.

B&T did not renew this specific theory in its appellate briefs n3 but, rather, relied [*40] upon a newly contrived theory. On appeal, it suggests for the first time that the exclusion clauses, taken in the ensemble, render the insurance policy illusory (and, accordingly, that the exclusions are unenforceable). We cannot countenance such a bald-faced switching of horses in mid-stream.

n3 To be sure, B&T's counsel did make a passing mention of the theory during oral argument in this court. We have no need to respond to that allusion. The district court correctly determined that Barletta's complaint sought to hold B&T liable only for damage to the school building caused by B&T's own work and that any such damage would be completely excluded from coverage under the policy. D. Ct. Op. at 10. Where, as here, a trial court accurately evaluates an argument and convincingly dispatches it, there is no need for a reviewing court to prepare a palimpsest. See, e.g., *Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 2 (1st Cir. 2004)*; *Cruz-Ramos v. P.R. Sun Oil Co., 202 F.3d 381, 383 (1st Cir. 2000)*; *Ayala v. Union de Tronquistas, 74 F.3d 344, 345 (1st Cir. 1996)*.

[**9]

Advancing one theory in the trial court and jettisoning it in favor of another (previously unarticulated) theory in the court of appeals is unacceptable. Such a praxis violates a prudential principle firmly embedded in our jurisprudence: that [HN4] in the absence of extraordinary circumstances -- and none exist in this case -- "legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." *Teamsters Union v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992)*. Cases holding to that effect are legion. See, e.g., *Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 3 (1st Cir. 2004)*; *United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997)*; *United States v. Dietz, 950 F.2d 50, 55 (1st Cir. 1991)*; *Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987)*; *Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 (1st Cir. 1979)*. B&T's tactics transgress that prudential principle.

In an attempt to place its neoteric theory beyond the range of the case law enforcing the raise-or-waive rule in this sort of situation, B&T makes three arguments. We find [**10] all of them unpersuasive.

First, B&T claims that it actually raised the "illusory coverage" theory below. The record belies that claim. The reference in B&T's reply brief is to an exchange that took place during the summary judgment hearing. In that exchange, its counsel questioned Public Service's interpretation of the policy by asking rhetorically, "what did we buy this insurance for?" In posing this rhetorical question, however, the lawyer was arguing for a particular interpretation of the policy language. He never mentioned the possibility that the breadth of the exclusions rendered the coverage illusory and, thus, that the exclusions were void as a matter of law.

Even if the rhetorical question was intended to start the argument down this path -- and that is a stretch -- the court was not provided a roadmap. That omission would doom the argument here. [HN5] To preserve a point for appeal, some developed argumentation must be put forward in the nisi prius court -- and a veiled reference to a legal theory is not enough to satisfy this requirement. See, e.g., *United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992)* ("A litigant cannot ignore her burden of developed [**11] pleading and expect the district court to ferret out small needles from diffuse haystacks."); *Rivera-Gomez v. Adolfo de Castro, 843 F.2d 631, 635 (1st Cir. 1988)* ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly or else forever hold its peace.") (citation and internal quotation marks omitted).

B&T next maintains that the raise-or-waive rule should not apply because it is not advancing a new issue on appeal, but merely a new argument. In mincing words in this fashion, B&T attempts to align its new theory with its old one, arguing in the face of obvious differences that these two theories are "the same" because [*41] both relate to the general issue of whether the exclusions govern this case.

We have decanted this wine before. In Slade, we explicitly rejected the notion that "only new facts and not new arguments about those facts are prohibited from debuting in the court of appeals," calling that notion "grounded more in hope than in precedent." *980 F.2d at 31*. We held, citing numerous cases, that [HN6] "a party is not at liberty to articulate specific arguments for [**12] the first time on appeal simply because the general issue was before the district court." *Id.* That holding is dispositive here.

Finally, B&T suggests that even if it failed to preserve its late-emerging theory for appeal, we should entertain that theory because the theory is uniquely important. We have recognized that [HN7] an appellate court has the authority, in its discretion, to consider theories not articulated below. See, e.g., *United States v. LaGuardia, 902 F.2d 1010, 1013 (1st Cir. 1990)*. We also have recognized, however, that exceptions of this kind to the raise-or-waive rule should be "few and far between," *Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995)*, and, accordingly, this power is to be used sparingly. The typical case involves an issue that is one of paramount importance and holds the potential for a miscarriage of justice. See *id. at 628*; *United States v. Krynicki, 689 F.2d 289, 292 (1st Cir. 1982)*.

B&T implores us to entertain the "illusory coverage" theory here, predicting that any other course will result in perpetuating the underwriting of "thousands, if not tens [**13] of thousands," of other illusory policies. Appellant's Reply Br. at 3. We reject these importunings. We simply do not see how a straightforward application of the raise-or-waive rule in this garden-variety coverage dispute either rises to a level of great importance or threatens to work a miscarriage of justice.

We add an eschatocol of sorts. Even though we are not compelled to speak to the merits, we note in the interest of completeness that B&T's new theory would not have prevailed even if it had been properly preserved.

B&T contends that the district court's reading of the business risk exclusions would eliminate all coverage for negligence claims, even though that is the very type of coverage that B&T purchased and that a CGL policy purports to provide. Appellant's Br. at 16. That contention is sheer sophistry. The exclusions leave most negligence claims unaffected; they merely bar coverage as to any damages to the project itself caused by B&T's faulty workmanship. While these exclusions do limit liability, they do not completely vitiate the bargained-for coverage (indeed, they do not come close to achieving so drastic a result). Many negligence claims are undoubtedly covered. [**14] If, for example, a wall of the school building collapsed due to B&T's negligence and damaged an adjacent structure (not part of the school complex), or if a B&T employee carelessly dropped a trowel and struck a passing vehicle, coverage would attach. Consequently, the grant of coverage is not illusory. See, e.g., *Bagley v. Monticello Ins. Co., 430 Mass. 454, 720 N.E.2d 813, 817 (Mass. 1999)* (holding that as long as "the policy still provides coverage for some acts, it is not illusory simply because of a potentially wide exclusion").

We need go no further. For the reasons elucidated above, we hold that the district court did not err in entering summary judgment in Public Service's favor.

**Affirmed.**